IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **HN5040 Limited,** *Plaintiff*, | § § § |
| v. | § § |
| **Curtin Maritime, Corp.,** *in personam*, **and the Tug KAREN C and barge SAND POINT,** *in rem*, *Defendants*. | § § § § § |

C.A. No. 3:24-cv-302

IN ADMIRALTY, Rule 9(h)

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT

COMES NOW HN5040 Limited (hereinafter "Plaintiff"), as owner of the M/T SPARTO, by its attorneys ROYSTON, RAYZOR, VICKERY & WILLIAMS L.L.P., and files this Verified Complaint for damages against Curtin Maritime, Corp., *in personam* (hereinafter "Curtin"), and the Tug KAREN C and barge SAND POINT, *in rem*, (hereinafter sometimes the "Tow") and respectfully shows as follows:

### I.
### JURISDICTION AND VENUE

1. This case is within the admiralty and maritime jurisdiction of this court pursuant to 28 U.S.C. § 1333 and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

2. The Court has *in rem* jurisdiction over the Tug KAREN C and barge SAND POINT pursuant to a Letter of Undertaking, dated August 7, 2023, which perfected *in rem* jurisdiction.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## II.
## PARTIES

4. At all material times, Plaintiff was and presently is a foreign business entity with its registered place of business in Monrovia, Liberia.

5. At all material times, Plaintiff owned the M/T SPARTO (IMO No. 9865116). The M/T SPARTO is a 62,812 gross ton Malta flagged crude oil tanker built in 2020, with a length of 249.97 meters and width of 44.03 meters.

6. At all material times, Defendant Curtin was and presently is a foreign business entity with their principal place of business in Long Beach, California. Curtin is authorized to do business in Texas and can be served through its registered agent Corporation Service Company at 211 East 7th Street, Ste. 620, Austin, TX 78701.

7. At all material times, Curtin owned and operated the pusher tug KAREN C (IMO No.: 7319010), a 448 gross ton United States flagged tugboat vessel built in 1973, with a length of 38.4 meters and width of 10.36 meters.

8. At all material times, Curtin owned and operated the barge SAND POINT (USCG Doc. No. 1326208) a dump scow barge with a length of 96 meters and a breadth of 16.45 meters.

## III.
## FACTS

9. On the morning of July 16, 2023, after loading her cargo, the M/T SPARTO departed Bayport Container Terminal under compulsory pilotage (2 pilots).

10. The M/T SPARTO transited the Bayport Ship Channel before turning into the Houston Ship Channel (hereinafter the "Channel") in Galveston Bay. The KAREN C and SAND POINT were also outbound in the Channel, ahead of the M/T SPARTO transiting on the far green side of the Channel (right side outbound).

11. At approximately 0804 in the vicinity of HSC lights 53/54, the M/T SPARTO was steering the centerline of the channel at a speed of 8.9 knots. The Tow was ahead on the green side of the main HSC (right of the M/T SPARTO) traveling at a speed of 6.2 knots.

12. By approximately 0810, when the two vessels were essentially abeam of one another, the Tow had slowed to 3.7 knots and was just out of the main channel on the green side. The M/T SPARTO was still steering the centerline at a speed of 9.1 knots.

13. At approximately 0811, in the vicinity of HSC lights 49/50, the Tow had increased her speed to 7.2 knots, had entered the main Channel and was coming toward M/T SPARTO. At this time, the M/T SPARTO had already safely passed the Tow without incident and she continued to steer the centerline at a speed of 8.9 knots.

14. At approximately 0812, just after the M/T SPARTO came through HSC lights 49/50, and as she continued to navigate on the centerline at a speed of 8.5 knots, the barge of the Tow, then making 8.6 knots, collided with the starboard quarter, aft of the bridge wing, of the M/T SPARTO.

15. After the collision, the M/T SPARTO, still navigating on the centerline of the Channel, momentarily reduced speed to assess the situation before increasing speed, with the Tow then coming away from the side of the M/T SPARTO.

16. As a result of the collision, the M/T SPARTO sustained hull damage, which required temporary repairs before the vessel could continue with her voyage as well as later permanent repairs.

17. Also as a result of the collision and the subsequent need for repairs, Plaintiff suffered economic losses and expenses, including but not limited to loss of hire.

## IV.
## CAUSES OF ACTION

18. Plaintiff realleges and incorporates herein each and every allegation and averment contained in Paragraphs 1-17 of Plaintiff's Verified Original Complaint with the same force and effect as if the same were more fully set forth herein.

19. Under the General Maritime Law, Defendants owed Plaintiff a duty to observe the standards of good and prudent seamanship, and a duty to exercise ordinary and reasonable care while operating in the Houston Ship Channel.

20. Additionally, Defendants had the statutory duty to follow the Inland Navigation Rules and the United States Coast Guard regulations while navigating the Houston Ship Channel so as to minimize the risk of collision.

21. "The applicable standards of care in a collision case stem from the traditional concepts of prudent seamanship and reasonable care, statutory and regulatory rules, and recognized customs and usages." *Stolt Achievement, Ltd. v. Dredge B.E. LINDHOLM*, 447 F.3d 360, 364 (5th Cir. 2006).

22. Defendants breached these duties through the following instances of negligence, negligence *per se*, gross negligence, and/or recklessness:

(a)   The unseaworthy condition of KAREN C;

(b)   Failure to navigate, steer, and control KAREN C properly and in accordance with the applicable rules of navigation and/or industry customs;

(c)   Carelessly navigating KAREN C without taking into consideration all forces to be taken into account by a competent navigator;

(d)   Failure to properly supervise the KAREN C's crew;

(e)   Failure to properly train their employees and/or the KAREN C's crew;

(f)   Operating KAREN C with an inadequate crew;

(g)   Failure to take reasonable action to prevent or minimize the events that precipitated the collision;

(h)   Failure to operate KAREN C with ordinary and reasonable care;

(i)   Negligently implementing or failing to implement policies and procedures appropriate to conduct maritime operations safely;

(j)   Violating U.S. Coast Guard, IMO, and/or other applicable regulations intended to prevent collisions at sea; and

(k)   Other acts or omissions deemed negligent, grossly negligent, negligent *per se*, and/or reckless to be shown at trial.

23.   In a negligent manner, the KAREN C came out of the barge lane and into the main navigable channel coming into contact with the M/T SPARTO.

24.   Because of the draft of the M/T SPARTO, she was restricted to navigating in the main Channel.

25.   The negligent navigation of the KAREN C was the sole cause of the collision.

26. "Establishing liability in a collision case is eased by the Pennsylvania rule, which provides that when a vessel is in violation of a statutory duty, the burden is on the offending vessel to prove that its conduct did not and could not have caused the collision." *Stolt*, 447 F.3d at 364; *see also The Pennsylvania.*, 86 U.S. 125, 136 (1873).

27. The Inland Navigational Rules apply to the Houston Ship Channel, where this collision occurred and specify the obligations of each of the vessels involved.

28. The Tow violated the Inland Navigational Rules, including but not limited to Rules 2, 5, 6, 7, 8, 9, 13, 17, and 18, which were the contributory and proximate cause of the collision.

29. Curtin is responsible *in personam* for the negligent operation and navigation of its vessel the KAREN C.

30. The KAREN C and the SAND POINT are responsible *in rem* for the navigational negligence.

31. By virtue of the KAREN C and the SAND POINT's tortious actions causing damage to the M/T SPARTO and Plaintiff, HN5040 Limited has a maritime lien against the KAREN C and the SAND POINT for the full amount of its claim.

32. Under the U.S. Maritime Law and Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff would be entitled to arrest the KAREN C and the SAND POINT to enforce its maritime lien. However, Curtin has provided a Letter of Undertaking, perfecting *in rem* jurisdiction and obviating the need for arrest. Plaintiff's maritime lien may be enforced against the Letter of Undertaking.

33. The collision, the associated damages to the M/T SPARTO and the Tow arising from the collision were not caused by any fault of Plaintiff or the M/T SPARTO.

34. Plaintiff reserves the right to amend this pleading to allege other faults on the part of the Tow and of Curtin as the facts pertaining to this casualty become more fully developed.

## V.
### DAMAGES

35. As a proximate cause of these events, Plaintiff has sustained significant losses resulting from the collision, including but not limited to costs to repair physical; damage, delay, loss of use, loss of charter hire, expenses and economic loss, in the total amount of $720,500.00, as near as may be presently ascertained.

36. The M/T SPARTO sustained significant damage to her hull and otherwise, requiring repairs and causing delays resulting in the vessel being placed off-hire and the loss of charter hire to Plaintiff.

37. The temporary repairs which took place offshore Galveston in order to allow the M/T SPARTO to continue and complete her voyage amounted to $34,502.27.

38. As a result of the necessity for temporary repairs, the time charterer placed the M/T SPARTO off-hire, resulting in a loss of hire of $52,306.88 during the period of the temporary repairs.

39. Bunker consumption during the off-hire period for the temporary repairs totaled $10,275.80.

40. Permanent repairs to the M/T SPARTO were also necessary, amounting to $219,105.05.

41. The off-hire loss associated with permanent repairs totaled $267,232.28.

42. Bunker consumption during permanent repairs amounted to $105,377.50.

43. Lastly, ancillary expenses associated with these repairs amounted to $31,700.22.

## VI.
### CONDITIONS PRECEDENT

44. All conditions precedent have been performed, satisfied, and/or discharged.

45. All and singular the premises as recited above are true and correct and within the admiralty and maritime jurisdiction of the United States and this Honorable Court.

## VI.
### PRAYER

WHEREFORE, Plaintiff HN5040 Limited respectfully prays that:

a. That due process in the form of law, according to the course and practice of this Honorable Court in causes of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, issue against the Defendants, citing them to appear and answer the foregoing, failing which a default will be taken against them for the principal amount of the claim, plus interest, costs and attorney's fees;

b. That Plaintiff have judgment entered in its favor against Defendants, jointly and severally, on its causes of action for the amount of Plaintiffs' damages, together with pre- and post-judgment interest, costs and disbursements of this action and attorney's fees;

c. That levy be had on the Letter of Undertaking to satisfy Plaintiffs' judgment; and

d. That the Court grant such other, further and different relief as the Court deems just and proper.

Respectfully submitted,

By: */s/ Dimitri P. Georgantas*
    Dimitri P. Georgantas
    State Bar No. 07805100
    Federal I.D. No. 2805
    Kevin P. Walters
    Texas State Bar No. 20818000
    Federal I.D. No. 5649
    ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
    1415 Louisiana Street, Suite 4200
    Houston, Texas 77002-7380
    Telephone: (713) 224-8380
    Facsimile:  (713) 225-9545
    dimitri.georgantas@roystonlaw.com
    kevin.walters@roystonlaw.com

**ATTORNEYS FOR PLAINTIFF**
**HN5040 Limited**

**OF COUNSEL:**

**ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **HN5040 Limited,** | § | |
| *Plaintiff,* | § | |
| | § | C.A. No. _____ |
| v. | § | |
| | § | IN ADMIRALTY, Rule 9(h) |
| **Curtin Maritime, Corp.,** *in personam,* | § | |
| **and the Tug KAREN C and barge** | § | |
| **SAND POINT,** *in rem,* | § | |
| *Defendants.* | § | |

**VERIFICATION**

STATE OF TEXAS    §
                  §
COUNTY OF GALVESTON §

BEFORE ME, the undersigned authority, on this day personally appeared Dimitri P. Georgantas, who being duly sworn, deposed and stated as follows:

"I am an attorney for Plaintiff HN5040 Limited in connection with the referenced matter. I have read the foregoing Verified Original Complaint and know the contents thereof, and that the same are true to the best of my knowledge, information and belief, based upon documentation and information provided to me by Plaintiff. The reason that I make this verification instead of Plaintiff is that Plaintiff does not have officers or directors within this District."

*/s/ Dimitri P. Georgantas*
Dimitri P. Georgantas

SUBSCRIBED AND SWORN to before me on the 22nd day of October, 2024.

*/s/ Robin Gilpin*
Notary Public in and for the
State of Texas

ROBIN GILPIN
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 03/11/28
NOTARY ID 7129010